UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

W. SCHMIDT,

    Plaintiff,

v.                              Case No. 8:20-cv-150-T-33AAS

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss the Complaint with Prejudice (Doc. # 5), filed on January 22, 2020. Plaintiff W. Schmidt responded on February 5, 2020. (Doc. # 11). For the reasons that follow, the Motion is denied.

**I.    Background**

Schmidt initiated this action against Wells Fargo in state court on October 19, 2019. (Doc. # 1). Wells Fargo removed the case to this Court on the basis of federal question jurisdiction on January 21, 2020. (Doc. # 2).

Schmidt alleges that Wells Fargo was both the lender and servicer for a refinanced mortgage on his home in Tampa, Florida. (Doc. # 1 at 3-4). The mortgage had a fifteen-year

term, beginning on June 1, 2003, and ending on May 1, 2018. (Id.).

The mortgage required Schmidt to make monthly payments into an escrow account to cover "property taxes and assessments and insurance required by the lender." (Id. at 4). Schmidt alleges that Wells Fargo "exercised extensive, unilateral control over the required escrow account for taxes and insurance and received greater economic benefit than in a typical transaction since it was not required to pay any interest to [Schmidt] on the funds paid into escrow and held by Wells Fargo." (Id.).

Although Schmidt satisfied all requirements under the mortgage, he "repeatedly experienced numerous and unexpected demands from Wells Fargo regarding the [m]ortgage, including but not limited to the coverages and limits of the property insurance required to be maintained by [Schmidt] pursuant to the terms of the [m]ortgage." (Id. at 4-5).

On October 5, 2017, Schmidt "submitted to Wells Fargo by Certified Mail . . . a Qualified Written Request ('QWR') pursuant to [the Real Estate Settlement Procedures Act ('RESPA')]." (Id. at 5, 28-37). This QWR requested numerous categories of documents and information, including an

accounting of Schmidt's loan from "the inception of [the] loan to the present." (Id. at 30-31).

On October 20, 2017, Wells Fargo replied by letter and attached copies of various documents, including a copy of the mortgage, a property appraisal from 2003, and a statement detailing the last three years of account activity. (Doc. # 1 at 5-6, 39-41). The letter stated that Wells Fargo would not turn over much of the information because it was "confidential, privileged and/or proprietary." (Id. at 40). The letter also stated that, although Schmidt's other requests were "too broad" to respond to, Wells Fargo would "review [Schmidt's] request again" if he provided "more specific details about what [he was] seeking." (Id. at 41).

Schmidt alleges that this reply letter was "a boilerplate template" that "did not respond directly to the specific requests contained within [his] QWR." (Id. at 6). He complains that "none of the documents or materials provided included the information specifically requested by [Schmidt's] October 5, 2017 QWR, namely, the complete foundation materials and data needed for a complete accounting of his mortgage and related required escrow account from its inception through the date of the response." (Id. at 7).

3

In a letter dated February 15, 2018, "Wells Fargo advised [Schmidt] that 'we have processed the funds required to pay off your loan in full.'" (Id. at 8, 42). Yet, Schmidt also received an invoice from Wells Fargo, dated January 29, 2018, showing an amount due by March 1, 2018, of $1,251.91. (Id. at 8, 44). Schmidt received another invoice, dated February 12, 2018, showing an amount due by April 1, 2018, of $1,251.91. (Id. at 8, 45).

"To protect his credit and his home, [Schmidt] paid both the March 1, 2018 and April 1, 2018 invoices in full and these payment checks were each cashed by Wells Fargo." (Id. at 8). Schmidt later received an April 16, 2018, letter from Wells Fargo with a refund check of $1,251.91 because his loan had already been paid in full. (Id.). Schmidt also received a February 28, 2018, letter from Wells Fargo including a final disbursement check of $4,265.52 because the escrow account had been closed in light of his paying off the mortgage. (Id. at 8-9). Because "[i]n the absence of RESPA compliance by Wells Fargo, [Schmidt] did not know whether the enclosed check was for the proper amount due," Schmidt "was hesitant to cash this escrow account check." (Id. at 9).

"In order to attempt to straighten out the amounts timely paid each month to Wells Fargo for almost 15 years and to

4

determine the amount due to be refunded form the escrow account as well as to resolve the problems created by Wells Fargo's correspondence claiming that an additional mortgage payment was due April 1, 2018, [Schmidt] submitted on August 2, 2018, a second letter . . . asking that this correspondence be treated by Wells Fargo as both a 'reconsideration of your handling of my October 5 request as well as a New RESPA [QWR].'" (Id. at 9, 48). This August 2 QWR stated that "Wells Fargo had failed to make a meaningful effort to comply with the provisions of RESPA as [Schmidt] had specifically previously requested" and "also asked Wells Fargo for the production of a privilege log." (Id. at 9-10).

Finally, the August 2 QWR addressed the "two Wells Fargo refund checks that [Schmidt] had received but was hesitant to negotiate since he was without the previously requested information to be able to know if they were in a proper amount and did not want to waive any of his rights." (Id. at 10). Schmidt sought "Wells Fargo's written permission to negotiate these checks without prejudice to reserving all of [his] legal rights" and requested Wells Fargo "specifically address this request and grant the requested authorization in writing within twenty (20) days." (Id. at 10, 52).

5

Wells Fargo's response to the August 2 QWR is dated August 20, 2018, and simply reiterated and enclosed a copy of Wells Fargo's previous response to the October 5 QWR. (Id. at 10, 58). According to Schmidt, "Wells Fargo refused to reconsider their prior objections and non-responsiveness and totally ignored the subsequent events reported in the August 2, 2018 letter as well as the specific request for permission for [Schmidt] to be able to negotiate the two refund checks without prejudice." (Id. at 11).

Schmidt maintains that "[w]ith respect to both the escrow account and the loan payment information and balance owed by [him] to Wells Fargo, an accounting is needed since said accounts are sufficiently complicated that an ordinary legal action demanding a fixed sum is clearly impracticable." (Id. at 7).

The complaint asserts six counts: equitable accounting of the escrow account (Count One); equitable accounting of payment account (Count Two); violations of RESPA (Counts Three and Four); and negligence (Counts Five and Six). (Doc. # 1). Wells Fargo now seeks dismissal of all counts with prejudice. (Doc. # 5). Schmidt has responded (Doc. # 11), and the Motion is now ripe for review.

## II. **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

7

**III. Analysis**

Wells Fargo seeks to dismiss all the counts of the complaint. The Court will address each claim in turn.

**A.   RESPA**

In Counts Three and Four, Schmidt asserts claims under RESPA, alleging that Wells Fargo failed to respond appropriately to Schmidt's two QWRs. (Doc. # 1 at 16-21). "Specifically, Wells Fargo failed to conduct a reasonable investigation and to provide the borrower with an explanation or clarification that included the information requested by the borrower or an explanation of why the information requested was unavailable or could not be obtained by the servicer." (Id. at 17, 20).

"RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquires." McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 471 (11th Cir. 2010)(per curiam)(citing 12 U.S.C. § 2605). "To state a claim for violation of RESPA § 2605(e), plaintiff[] must allege facts showing that (1) defendant is a loan servicer, (2) plaintiff[] sent defendant a valid QWR, (3) defendant failed to adequately respond within the 20/60 day statutory period, and (4) plaintiff[] [is] entitled to actual

8

or statutory damages." DeBoskey v. SunTrust Mortg., Inc., No. 8:14-cv-1778-MSS-TGW, 2017 WL 4083557, at *11 (M.D. Fla. Sept. 14, 2017)(quoting Smith v. Bank of Am. Home Loans, 968 F. Supp. 2d 1159, 1170 (M.D. Fla. 2013)).

> RESPA defines a "qualified written request" as:
>
> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Wells Fargo argues that Schmidt's two letters, from October 2017 and August 2018, are not QWRs as defined by RESPA. (Doc. # 5 at 6-8). Wells Fargo emphasizes that neither letter alleges an error with his mortgage payment or escrow accounts. (Id.). Instead, the two letters request various types of information and documents.

This argument fails because "Section 2605(e)(1)(B)(ii) is written in the disjunctive." Gnipp v. Bank of Am. N.A., No. 2:15-cv-99-FtM-29CM, 2016 WL 4810541, at *5 (M.D. Fla. Sept. 14, 2016). "In other words, a communication can satisfy

RESPA by 'includ[ing] a statement of the reasons . . . that the account is in error,' or by 'provid[ing] sufficient detail to the servicer regarding other information sought by the borrower.'" Id. (quoting 12 U.S.C. § 2605(e)(1)(B)); see also Goldman v. Aurora Loan Servs., LLC, No. 109-CV-3337-RWS, 2010 WL 3842308, at *5 (N.D. Ga. Sept. 24, 2010)("Defendants allege that Plaintiff's letter was not a QWR because it did not set forth any reasons for why the account was in error, but Defendants fail to recognize that the definition of a QWR is disjunctive and also 'includes a statement . . . [that] provides sufficient detail to the servicer regarding other information sought by the borrower.'" (quoting 12 U.S.C. § 2605(e)(1)(B)(ii))).

Here, Schmidt's letters unquestionably request information from Wells Fargo. Thus, despite lacking a clear allegation of error, Schmidt's letters may still qualify as QWRs under RESPA. And Wells Fargo has not argued that Schmidt's numerous requests for various types of information and documents fail to "provide sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). Nor is the Court persuaded by Wells Fargo's assertion — unsupported by any case law — that "even if [Schmidt's] correspondence were a proper QWR . . .

he would only be entitled to three (3) years of his loan payment history since violations of RESPA . . . have a 3 year statute of limitations." (Doc. # 5 at 8).

Accordingly, Schmidt has sufficiently alleged that his letters were QWRs to which Wells Fargo inadequately responded. The Motion is denied as to the RESPA claims.

### B. Negligence

In Counts Five and Six, Schmidt asserts claims for negligence based on Wells Fargo's alleged violations of RESPA. (Doc. # 1 at 22-25).

The parties agree that Schmidt's negligence claim rises or falls with his RESPA claims. (Doc. # 5 at 10; Doc. # 11 at 10); see also Ranger v. Wells Fargo Bank N.A., 757 F. App'x 896, 904 (11th Cir. 2018)("The parties agree that Plaintiffs' negligence *per se* claim rises and falls alongside Plaintiffs' RESPA claim. It is impossible to see how they could disagree since Plaintiffs' sole negligence theory is that Wells Fargo violated RESPA by conducting an unreasonable investigation.").

Because the Motion has been denied as to the RESPA claims, the Motion is also denied as to the negligence claims. See Id. ("Plaintiffs have stated a claim under RESPA.

Therefore, their negligence *per se* claim must survive the motion to dismiss as well.").

   C. **Equitable Accounting**

In Count One, Schmidt seeks an equitable accounting of his escrow account. (Doc. # 1 at 14). He maintains that he and Wells Fargo "shared a fiduciary relationship with respect to the escrow account" and that the "mortgage loan transaction between the parties was involved and complicated by its nature." (Id.). He insists that "[a] remedy at law is inadequate." (Id.).

In Count Two, Schmidt seeks an equitable accounting of the payment account for his mortgage. (Id. at 15-16). Schmidt and Wells Fargo allegedly "shared a contractual relationship with respect to the crediting of payments . . . pursuant to the note and mortgage" and "the payments and adjustments made by Wells Fargo, often on an annual or even more frequent basis, involved extensive estimates, calculations and complicated transactions." (Id. at 15). He insists that "[a] remedy at law is inadequate." (Id.). Schmidt highlights that "there [was] an additional overpayment of [] $1,251.91," which Wells Fargo has not refunded Schmidt, and, thus, "a complete accounting of the payments made and interest charged

on the Wells Fargo loan over its 15-year term [is needed] to determine the refund due and owing to" Schmidt. (Id.).

As an initial matter, the Court notes that equitable accounting is generally considered a remedy rather than a stand-alone cause of action. See Zaki Kulaibee Establishment v. McFliker, 771 F.3d 1301, 1310 n.21 (11th Cir. 2014)("Zaki purports to appeal the dismissal of its accounting 'claim.' We note that an accounting is best understood as a *remedy* for a cause of action, not as a cause of action in its own right."); see also Becker v. Davis, 491 F.3d 1292, 1305 (11th Cir. 2007), abrogated on other grounds by Arthur Andersen LLP v. Carlisle, 556 U.S. 624 (2009)("[A]n accounting is a remedy attached to a separate independent cause of action."). Nevertheless, some Florida courts have allowed stand-alone causes of action for equitable accounting to proceed, so this Court will not dismiss Schmidt's equitable accounting claims on that ground. See, e.g., Cassedy v. Alland Invs. Corp., 128 So. 3d 976, 978 (Fla. 1st DCA 2014)("[A]n action for an accounting is a separate and distinct cause of action that may be available where a fiduciary duty exists.").

"To obtain an accounting under Florida law, . . . a party must show either (1) a sufficiently complicated transaction and an inadequate remedy at law or (2) the existence of a

13

fiduciary relationship." Zaki Kulaibee Establishment, 771 F.3d at 1311. "As to complexity, transactions are deemed 'sufficiently complicated to warrant an equitable accounting when a jury would not be reasonably able, based on the time and effort required, to assess the evidence and reach an accurate value of the amount owed.'" Cox Television Jacksonville, LLC v. Fla. Cable, Inc., No. 5:16-cv-6-Oc-32PRL, 2016 WL 11578269, at *6 (M.D. Fla. July 13, 2016)(quoting Blitz Telecom Consulting, LLC v. Peerless Network, Inc., No. 6:14-cv-307-Orl-40GJK, 2015 WL 9269413, at *9 (M.D. Fla. Dec. 21, 2015)), report and recommendation adopted, No. 5:16-cv-6-Oc-32PRL, 2016 WL 11578270 (M.D. Fla. Aug. 17, 2016). "[T]he determination of whether a series of transactions is sufficiently complex to warrant equitable accounting is fact specific." Traditions Senior Mgmt., Inc. v. United Health Adm'rs, Inc., No. 8:12-cv-2321-T-30MAP, 2013 WL 3285419, at *5 (M.D. Fla. June 27, 2013).

According to Wells Fargo, Schmidt "has failed to allege any facts which demonstrate that he has no adequate remedy at law and that only an equitable accounting will provide him with relief." (Doc. # 5 at 13). Wells Fargo also argues that Schmidt "still has failed to incorporate any factual allegations which provide any plausible basis to believe that

14

Wells Fargo did not properly account for all of his payments and correctly returned his escrow monies." (Id. at 11). Similarly, Wells Fargo contends that Count Two at most "demonstrates . . . that Wells Fargo may owe [Schmidt] a refund for $1,251.91." (Id. at 13). Thus, in Wells Fargo's opinion, Schmidt "does not need an accounting," and "[i]f [he] truly believes that Wells Fargo has held onto an additional payment to which it is not entitled, [he] has legal remedies he may assert." (Id.).

The Court disagrees with Wells Fargo. Schmidt has sufficiently pled a claim for equitable accounting of the escrow account in Count I. He has alleged that Wells Fargo and Schmidt had a fiduciary relationship regarding the escrow account (Doc. # 1 at 14) — an allegation that Wells Fargo has not challenged in its Motion. "Recently, the Eleventh Circuit clarified the circumstances where a plaintiff is entitled to an accounting under Florida law, stating that when a fiduciary relationship exists between the parties, 'an accounting is appropriate in every case.'" Samana Inc. v. Lucena, 156 F. Supp. 3d 1373, 1374 (S.D. Fla. 2016)(quoting Zaki Kulaibee Establishment, 771 F.3d at 1310-11). Thus, because Schmidt has alleged a fiduciary relationship regarding the escrow account, Schmidt has properly stated a claim for equitable

accounting of the escrow account. See Id. ("[T]he Court finds that because Plaintiff has alleged that the Parties had a fiduciary relationship, the Plaintiff may properly state a claim for equitable accounting.").

Regarding Count II, the allegation that Wells Fargo has failed to refund an additional $1,251.91 from Schmidt's payment account plausibly supports that an accounting of the payment account is necessary. Indeed, Schmidt has pled that no adequate remedy at law is available and that the 15-year mortgage was a sufficiently complicated transaction. (Doc. # 1 at 15-16). Given that the determination of whether a transaction is sufficiently complex is fact-specific, such determination is better left for the summary judgment stage. See Cox Television Jacksonville, LLC, 2016 WL 11578269, at *7 (denying motion to dismiss accounting claim and explaining that "[w]hether the transaction is sufficiently complex — such that a jury would not be able to reasonably assess the evidence — will need to be decided at a later stage of the litigation").

And, at this point, it is unclear whether a legal remedy would allow for sufficient discovery of how much is owed to Schmidt, so the Court cannot say that a remedy at law is as full and adequate a remedy as an accounting. See Id. (denying

16

motion to dismiss accounting claims because "at this point it is unclear whether the records obtained through discovery will be sufficient for the Plaintiffs to prove their damages; it is plausible that as a practical matter they may not"); Trenton Int'l, Ltd. v. Trenton Int'l, Inc., No. 2:05-cv-581 FtM-29SPC, 2006 WL 3201869, at *4 (M.D. Fla. Nov. 6, 2006)("[T]here can be grounds for an equitable accounting where the contract demands between litigants involve extensive or complicated accounts and it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity." (citation omitted)). The Court finds that Count Two states a claim for an equitable accounting of the mortgage payment account.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss the Complaint with Prejudice (Doc. # 5) is **DENIED.**

(2) Wells Fargo's answer to the complaint is due 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 14th day of February, 2020.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE